IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KRISTEN HART, | CIVIL ACTION NO. 3:11-CV-1576 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| UNIVERSITY OF SCRANTON and GEORGE JONES, | |
| Defendants. | |

**MEMORANDUM**

Presently before the Court is the Defendants' Motion to Dismiss of Plaintiff Kristen Hart's Amended Complaint. (Doc. 11.) Hart alleges she was expelled from Defendant University of Scranton in breach of her contract with the University. Because Hart has not identified any specific contractual promise that the Defendants failed to honor, I will dismiss her Amended Complaint in full for failure to state a cause of action.

**BACKGROUND**

Plaintiff Kristen Hart alleges the following. From January of 2009 to approximately August of 2010, Hart was an online student at the University of Scranton in Scranton, Pennsylvania. (Am. Compl. at ¶¶ 13-16, Doc. 11.) One of her classes, a practicum in elementary education, was taught by Professor George Jones. Hart included text she composed for another class in an assignment for Professor Jones, which Professor Jones construed as plagiarism. (*Id.* at ¶¶ 16-18.) As a result, Hart received a zero grade for the course and was expelled from the University. By the time of her expulsion, Hart had spent more than $15,000 on her education at the University of Scranton. Her expulsion has also

harmed her ability to advance in her career as a teacher.  (*Id.* at ¶ 21.)

Hart filed her original Complaint on August 23, 2011.  In an Order dated December 16, 2011, I granted the Defendants' Motion to Dismiss but granted Hart leave to file an amended complaint.  Hart filed her Amended Complaint on January 3, 2011, which was followed thereafter by Defendants' Motion to Dismiss on January 20, 2012. Hart's Amended Complaint alleges a sole claim for breach of contract.[1]  Specifically, Hart alleges the Defendants: (1) illegally dismissed her from the University; (2) breached provisions in the University's Academic Code of Honesty by "expelling [her] for plagiarism, when no such plagiarism existed"; (3) failed to give her a hearing or an opportunity to confront the evidence or witnesses against her; and (4) failed to give her an opportunity to present evidence in her favor. (*Id.* at ¶¶ 24, 31.)  The Defendants' Motion has been fully briefed and is now ripe for the Court's review.

## DISCUSSION

**I.  Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  The Court does not consider whether a plaintiff will ultimately prevail.  *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim.  *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

---

[1] Unlike her original Complaint, Hart's Amended Complaint does not make a claim for fraudulent misrepresentation.

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly,* 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

As such, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks

for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

**II. Plaintiff's Claim for Breach of Contract**

Hart alleges that the Defendants breached their contractual obligations by illegally dismissing her from the University, violating the University handbook's definition in regard to plagiarism, and failing to allow her a hearing or opportunity to present evidence before her dismissal. Because Hart still fails to point to concrete representations that have been breached by the Defendants, Defendants Motion to Dismiss will be granted.

    **A.    Hart's Dismissal as Predicated on Plagiarism**

A claim for breach of contract by a student against a university requires: "1) the

existence of a contract and its terms; 2) a breach of the duty imposed by the contract; and 3) damages that resulted." *Furey v. Temple University*, 730 F.Supp.2d 380, 400 (E.D. Pa. 2010) (citing *CoreStates Bank v. Cutillo*, 723 A.2d 1053, 1058 (Pa.Super.Ct. 1999)).

In Pennsylvania, "the relationship between a private educational institution and an enrolled student is contractual in nature." *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999). This contractual arrangement is derived solely from "the written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." *Id.* As such, a complaint must point to specific failures on the part of a university within these written materials. *Id.* (finding that a complaint "cannot stand unless linked to the written policies of the university"); *see also Vurimindi v. Fuqua School of Business*, 435 Fed. Appx. 129, 133 (3d Cir. 2011) (finding that, under Pennsylvania law, "allegations must relate to a specific and identifiable promise that the school failed to honor."); *Gundlach v. Reinstein*, 924 F.Supp. 684, 689 (E.D. Pa. 1996) (finding that a complaint did not state a claim for relief under breach of contract where the plaintiff failed "to identify the specific benefits [the student] was allegedly promised, the means by which he was promised them, and the manner in which Defendants allegedly reneged on those promises."). Further, the Plaintiff must show "definite and certain terms before a contract can be considered binding." *Vurimindi*, 435 Fed. App'x at 133; *see also Linnet v. Hitchcock*, 471 A.2d 537, 540 (Pa. Super. Ct. 1984).

Hart alleges that the University wrongfully dismissed her for plagiarism since she did not actually plagiarize according to the definition set forth within University's handbook. (Am. Compl. at ¶¶ 25-29, Doc.11.)   In particular, the University handbook defines

5

"plagiarism" as "giving the impression that you have written or thought something that you have in fact borrowed form someone else." (Am. Compl. at ¶ 26, Doc.11; *see also* Doc. 11, Exhibit A.).  From this, Hart argues that the very use of the term "creates a contractual duty to show that plagiarism was committed." (*Id.* at ¶ 30.)  Alternatively, Hart argues that " if the Handbook does not form an express contract between the parties then it is the basis of an implied contract." (Pl.'s Br. at 6, Doc. 14.)  In either case, Hart claims that her actions did not meet the Handbook definition, which "makes it clear that one cannot plagiarize her own work." (Pl.'s Br. at 3, Doc. 14.)  Rather, Hart argues that there are "issue[s] of fact as to why [she] was dismissed, since there are three alternate theories: plagiarism, a zero grade, and copying  one's own work." (Pl.'s Br. at 5, Doc. 14.)

As an initial matter, reliance on an implied contract theory does not relieve Hart of her obligation to identify the breach of a specific contract provision.  *Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397, 404 (Pa. Super. Ct. 1992) (affirming a dismissal of an alleged breach of an implied contract for a quality education where there was no "pleading of any other specific misrepresentation or failure to perform a contractual undertaking."). Moreover, Hart has not identified any "specific identifiable promise that the [University] failed to honor." *Vurimindi* 435 Fed. Appx. at 133.  Hart alleges that the University had a "contractual duty" not to violate the Handbook, but she has not provided any specific provision giving rise to such a duty.   While the University may have misconstrued "plagiarism" as per the Handbook, this passage is merely a definition, not a promise, and Hart points to no clause that would bind the University to strictly adhere to that definition.  Moreover, Hart has not identified any contractual provision that dictates under what conditions the University could

6

expel her.  Simply, the term Hart relies on is a definition, and she has not shown how this term has created an affirmative duty on the part of the University.

Instead of pointing to any particular contractual provision or breach, Hart claims that there are factual issues that remain to be decided.  However, these potential issues are irrelevant in a claim for breach of contract where, as here, the plaintiff does not point to specific and identifiable promises that were not kept.  Therefore, as Hart has failed to point to any such specific terms, her Amended Complaint will be dismissed insofar as it is predicated on the University's reliance on the term "plagiarism."  As to the claim against Professor Jones, Hart fails to cite authority to contest Defendants' motion to dismiss this particular party.  And, since an agent cannot be held personally liable for an alleged breach of contract by his principal, *Rossi v. Pennsylvania State Univ.*, 489 A.2d 828, 837 (Pa. Super. Ct. 1985)*,* the claim as against Professor Jones will also be dismissed.

**B.     Denial of an Opportunity to Confront Witnesses and Present Evidence Before Dismissal**

Although a specific allegation in the Amended Complaint, Hart's brief does not address the University's apparent contractual breach in failing to allow Hart an opportunity to confront witnesses and present evidence in her defense.

In *Kimberg v. University of Scranton*, the Third Circuit noted that "[b]ecause the relationship between a private college and its students is contractual in nature, a student being disciplined is entitled 'only to those procedural safeguards which the school specifically provides.'" 411 Fed. Appx. 473, 481 (3d Cir. 2010) (citing *Psi Upsilon of Phila. v. Univ. of Pa.*, 591 A.2d 755, 758 (Pa. Super. Ct. 1991)).  Although private colleges enjoy a substantial amount of discretion in their disciplinary procedures, they are "limited by the

principle that such procedures must be 'fundamentally fair.'" *Id.* (citing *Schulman v. Franklin & Marshall Coll.*, 538 A.2d 49, 52 (Pa. Super Ct. 1988); *Psi Upsilon*, 591 A.2d at 758).

Similar to her alleged breach of contract claim, Hart does not provide any explicit basis for the particular procedures she argues she was entitled to. Additionally, Hart does not allege that the procedures taken by the Defendants as to her dismissal were fundamentally unfair. As such, the claim regarding the opportunity to confront witnesses and present evidence will also be dismissed.

## **CONCLUSION**

Defendants' Motion to Dismiss will be granted because Hart has failed to present contractual provisions to support her breach of contract claim. An appropriate order follows.

March 26, 2012  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge